

U.S. Department of Justice

United States Attorney
Eastern District of New York

EAG/JPM
F. #2018R01021

271 Cadman Plaza East
Brooklyn, New York 11201

March 26, 2020

By Email and ECF

The Honorable Margo K. Brodie
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Amato, et al.
                  Criminal Docket No. 19-442 (S-1) (ILG)

Dear Judge Brodie:

        The government respectfully submits this letter in opposition to defendant Daniel Capaldo's emergency motion for release on bail based principally on the existence of the COVID-19 pandemic. The defendant, an inducted member of the Colombo organized crime family of La Cosa Nostra ("the Colombo family"), is charged with racketeering and related offenses. For the reasons set forth below, the motion should be denied.

    I.    The Defendant Is a Danger to the Community

        The defendant remains a danger to the community. As the government argued in its original detention memo (ECF Dkt. No. 21), which is incorporated by reference, as an inducted member of La Cosa Nostra, the defendant represents a particular and unique threat to his community because of the continuing nature of the enterprise he chose to join, and its established violent activities. As detailed in the government's detention memo, Capaldo has three prior federal convictions, all connected to his membership and association with the Colombo family, and has a history of committing crimes while on supervised release. In light of the charged crimes and his criminal history, Judge Glasser entered a permanent order of detention on dangerousness grounds. (ECF Docket Entry Nos. 176, 178).

II. Release Is Not Warranted Under the "Compelling Reason" Clause

The defendant argues that (1) his age and health history, including "asthma," a "history of pneumonia and scarring of both lungs," make him more susceptible to succumbing to COVID-19 (Def. Mot. 1); (2) the conditions at the Metropolitan Detention Center ("MDC") will result in the spread of COVID-19; and (3) the restrictions put in place by the MDC to mitigate the spread of COVID-19 will unduly impair his ability to prepare a defense. He claims these are "compelling reasons" justifying release under 18 U.S.C. § 3142(i).

The Bail Reform Act, 18 U.S.C. § 3142(i), provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." As Judge Garaufis recently noted in rejecting an application similar to the instant motion, "[t]his provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." United States v. Hamilton, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

The defendant, who is 55 years old, has a history of asthma and two years ago, apparently contracted pneumonia that resulted in scarring of his lung tissue. The defendant has provided documentation of his asthma (which is also reflected in a prior PSR prepared for the defendant),[1] but has not been able to secure any documentation of his prior bout with pneumonia or scarred lung tissue (aside from a statement from his wife). Although the defendant complains that he has received soap only twice in the past two weeks and that the commissary is now closed, he does not claim that he has run out of soap; to the extent that he has or he does in the future, counsel for the MDC has advised that he can obtain more soap by requesting it from his unit team. Furthermore, it is true that the commissary is closed this week, but the closure is unrelated to COVID-19 (the MDC is conducting an annual inventory) and it will reopen next week.

The defendant's argument that MDC presents unmanageable risks to his health is also unfounded. The Bureau of Prisons ("BOP"), which operates the MDC, has implemented national measures to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. While the government recognizes the seriousness of COVID-19 and the increased risk to certain federal prisoners, a generalized risk alone does not justify releasing the entire Bureau of Prisons population, much less a prisoner being held for violence and racketeering charges. Simply residing in

---

[1] The doctor characterized the defendant's asthma as "mild" and did not opine on what impact his asthma would have on him should he contract COVID-19.

the MDC cannot be a basis for being released. The BOP's measures, which have been implemented in the MDC, include the following:

- <u>Suspension of all social and legal visits</u>: Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls. Inmates will be provided additional inmate telephone minutes each month.

- <u>Inmate movement</u>: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- <u>Screening and testing of inmates</u>: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

- <u>Modified Operations</u>: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, as well as implementation of other modifications specific to each facility.

In addition, counsel at the MDC, after consultation with the relevant staff, has advised the government that inmates incarcerated at MDC, including the defendant, are permitted to take additional steps to self-seclude by remaining in their cells. In short, the BOP is monitoring the status of the COVID-19 virus and is taking emergency steps to ensure the safety of its staff, inmates and the public.

Other lower court decisions easily can be distinguished from the defendant's situation. First, in <u>United States v. Stephens</u>, 2020 WL 1295155, 15 CR 95 (AJN) (S.D.N.Y. Mar. 19, 2020), the first basis offered by the district court for reversing the pretrial detention order was that "the strength of the primary evidence relied upon by the Government to demonstrate the danger the Defendant poses to the community has been undermined by new information not available to either party at the time of the [original detention hearing]" and that the new information "indicates that the Government's case is weaker than it [was] believed to be [at the original detention hearing]." <u>Id.</u> at *1. Notably, the defendant there faced a violation of supervised release charge, <u>id.</u>, and his supervised release hearing was scheduled to occur within the week. Thus, the term of the temporary release was quite short and against the backdrop that he did "not pose a danger to the community," <u>id.</u> at *3. The defendant here, whose trial is not imminent, is not on similar footing. Importantly, there is no new information undermining the government's prior position on the defendant's dangerousness.

Second, in <u>United States v. Raihan</u>, 20-CR-68 (BMC) (JO) (E.D.N.Y. Mar. 12, 2020), Bail Hearing Transcript (ECF No. 20), at 10, which the defendant cites for the

proposition that the court "continue[d] a criminal defendant on pretrial release rather than order him remanded to the [MDC]" based on "increasing risk to the community," (Def. Mot. 3-4), that defendant violated the bond issued by Magistrate Judge Orenstein within 24 hours and Magistrate Judge Bloom ordered him detained the next day.  See id. ECF Dkt. No. 22: Order of Detention.  There was no specific finding that being housed at MDC posed any risk that outweighed the operation of all other pertinent factors under the Bail Reform Act.

Finally, the defendant attempts to turn the tables and use the mitigation efforts put in place by BOP, principally the limitations on legal visits, to suggest they create circumstances that justify release.  The defendant suggests these significant mitigation efforts create difficulty for the defendant's review of the electronic discovery that was provided in this case.  There is no motion schedule or trial date in this case, and the defendant's motion provides no specific details concerning why he cannot review any discovery materials that would be available to him under normal circumstances.  Counsel for the MDC has advised that the law library is now open again and the defendant will be able to review electronic discovery there.  Moreover, the defendant is represented by counsel and the defendant's access to his counsel by phone remains the same as prior to the COVID-19 outbreak.  The defendant has not shown any significant infringement on his ability to consult with his attorney, much less provided a reason to believe the efficacy of his defense has been adversely impacted.  He also has not demonstrated that the measures put in place by BOP do not serve and further a "legitimate penological interest[]."  Cf. Overton v. Bazzetta, 539 U.S. 126, 131–32 (2003) (upholding restrictions on prison visitation rights).  They do serve such an interest, which is protecting the health of people like the defendant and the many employees who work there.  All of the participants in the case, including the government attorneys, defense counsel, case agents, and defendants have been affected by COVID-19.  The aim is to ensure everyone lives through the pandemic and the case can return to normal pre-trial proceedings as soon as possible.  The defendant, however, made choices to commit to a life of criminal conduct that preceded this epidemic, which conclusively demonstrated by clear and convincing evidence that he is a danger to the community.  Those choices justified his detention, and continue to do so.

III.    Conclusion

The defendant, a member of La Cosa Nostra who is charged with racketeering and related offenses, remains a danger to the community.  His motion for emergency bail, based primarily on the generalized risks from COVID-19 and circumstances that are hardly unique to him, do not overcome the risks he poses if released.  The defendant has not presented a

"compelling reason" for his release under Section 3142(i). Based on this information, and because the defendant poses a serious danger to the community, the permanent order of detention should remain in effect.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: \_\_\_\_/s/_____
Elizabeth Geddes
James P. McDonald
Assistant U.S. Attorneys
(718) 254-6430/6376

cc: Defense Counsel (by ECF)
     Clerk of the Court (ILG) (by ECF)