NS:EAG/MEF/JM
F. # 2018R01021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | S U P E R S E D I N G <br> I N F O R M A T I O N |
| - against - | Cr. No. <u>19-442</u> (S-3) (BMC) |
| DANIEL CAPALDO, <br>     also known as "The Wig" <br>     and "Shrek," | (T. 18, U.S.C., §§ 1962(c), 1963, <br>  1963(a), 1963(m) and 3551 <u>et</u> <u>seq</u>.) |
|                   Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

At all times relevant to this Superseding Information, unless otherwise indicated:

The Enterprise

1. The Colombo organized crime family of La Cosa Nostra, including its members and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter, the "Colombo crime family" and the "enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The Colombo crime family engaged in, and its activities affected, interstate and foreign commerce. The Colombo crime family was an organized criminal group that operated in the Eastern District of New York and elsewhere.

2. La Cosa Nostra operated through organized crime families. Five of these crime families – the Bonanno, Colombo, Gambino, Genovese and Luchese crime families – were headquartered in New York City and supervised criminal activity in New York, in other areas of the United States and, in some instances, in other countries. Another crime family, the Decavalcante crime family, operated principally in New Jersey, but from time to time also in New York City.

3. The ruling body of La Cosa Nostra, known as the "Commission," consisted of leaders from each of the crime families. The Commission convened from time to time to decide certain issues affecting all of the crime families, such as rules governing crime family membership.

4. The Colombo crime family had a hierarchy and structure. The head of the Colombo crime family was known as the "boss." The Colombo crime family boss was assisted by an "underboss" and a counselor known as a "consigliere." Together, the boss, underboss and consigliere were the crime family's "administration." With the assistance of the underboss and consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups. The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family. Members of the Colombo crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny. Further, on occasion, the Colombo crime family

was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

      5.      Below the administration of the Colombo crime family were numerous "crews," also known as "regimes" and "decinas." Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina." Each captain's crew consisted of "soldiers" and "associates." The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection. In return, the captain often received a share of the crew's earnings.

      6.      Only members of the Colombo crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button." Associates were individuals who were not members of the crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the crime family.

      7.      Many requirements existed before an associate could become a member of the Colombo crime family. The Commission of La Cosa Nostra from time to time limited the number of new members who could be added to a crime family. An associate was also required to be proposed for membership by an existing crime family member. When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a

secret ceremony. During the ceremony, the associate, among other things, swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

## Methods and Means of the Enterprise

8. The principal purpose of the Colombo crime family was to generate money for its members and associates. This purpose was implemented by members and associates of the Colombo crime family through various criminal activities, including drug trafficking, robbery, extortion, fraud, illegal gambling and loansharking. The members and associates of the Colombo crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9. Although the primary purpose of the Colombo crime family was to generate money for its members and associates, the members and associates at times used the resources of the family to settle personal grievances and vendettas, sometimes without the approval of higher-ranking members of the family. For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10. The members and associates of the Colombo crime family engaged in conduct designed to prevent government detection of their identities, their illegal activities and the location of proceeds of those activities. That conduct included a commitment to

murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11. Members and associates of the Colombo crime family often coordinated criminal activity with members and associates of other organized crime families.

### The Defendant

12. The defendant DANIEL CAPALDO, also known as "The Wig" and "Shrek," was a soldier within the Colombo crime family.

### RACKETEERING

13. The allegations contained in paragraphs one through 12 are realleged and incorporated as if fully set forth in this paragraph.

14. In or about and between December 2018 and September 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL CAPALDO, also known as "The Wig" and "Shrek," together with others, being a person employed by and associated with the Colombo crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.

### RACKETEERING ACT ONE
(Extortion Conspiracy/Extortion – John Doe #1 and John Doe #2)

15. The defendant DANIEL CAPALDO committed the following acts, either one of which alone constitutes Racketeering Act One:

A. <u>Extortion Conspiracy</u>

16. In or about and between December 2018 and January 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL CAPALDO, together with others, did knowingly and intentionally conspire to steal property by extortion, in that the defendant and others agreed to obtain property, to wit: the right to collect a debt and the debt itself, by compelling and inducing other persons, to wit: John Doe #1 and John Doe #2, individuals whose identities are known to the United States Attorney, to deliver such property by instilling in such persons a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to one or more persons in the future, and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 105.10.

B. <u>Extortion</u>

17. In or about and between December 2018 and January 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL CAPALDO, together with others, did knowingly and intentionally steal property by extortion, in that the defendant and others obtained property, to wit: the right to collect a debt and the debt itself, by compelling and inducing other persons, to wit: John Doe #1 and John Doe #2, to deliver such property by instilling in such persons a fear that, if the property were not so delivered, the defendant and others would (1) cause physical injury to one or more persons in the future, and (2) cause damage to property, in violation of New York Penal Law Sections 155.40(2), 155.05(2)(e)(i), 155.05(2)(e)(ii) and 20.00.

## RACKETEERING ACT TWO
(Financing Extortionate Extensions of Credit)

18.    In or about and between January 2019 and May 2019, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DANIEL CAPALDO, together with others, did knowingly and willfully advance money to one or more persons with reasonable grounds to believe that it was the intention of those persons to use the money so advanced directly and indirectly for the purpose of making extortionate extensions of credit, in violation of Title 18, United States Code, Sections 893 and 2.

(Title 18, United States Code, Sections 1962(c), 1963 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

19.    The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 1963(a), which requires any person convicted of such offense to forfeit: (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

20.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

  (Title 18, United States Code, Sections 1963(a) and 1963(m))

*[signature: Seth D. DuCharme]*
SETH D. DuCHARME
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #   2018R01021
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

*DANIEL CAPALDO,*

Defendant.

# SUPERSEDING INFORMATION

(T. 18, U.S.C., §§ 1962(c), 1963, 1963(a), 1963(m) and 3551 et seq.)

*A true bill.*

_____

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____

*Clerk*

Bail, $ _____

_____

*Elizabeth Geddes and Megan Farrell, Assistant U.S. Attorneys (718) 254-6430/6448*