# LAW OFFICES OF PETER GUADAGNINO
## A PROFESSIONAL CORPORATION

**PETER GUADAGNINO, ESQ.**
ATTORNEY AND COUNSELOR AT LAW

30 WALL STREET, 8TH FLOOR
NEW YORK, NEW YORK 10005
OFFICE (212) 709-8099
FASCIMILE (718) 213-4744

March 9, 2022

**BY ECF**

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Amato, et. al (Daniel Capaldo)
       Criminal Docket No. 1:19-CR-442 (BMC)

Dear Judge Cogan:

      I represent Daniel Capaldo, who is scheduled to be sentenced on March 23, 2022. This letter is submitted to aid the Court in the sentence process. Counsel urges the Court to consider the facts of this case and examine Mr. Capaldo's entire background, and to impose a sentence that is sufficient but not greater than necessary to serve the interest of justice and the traditional purposes of a criminal justice sentence. It is posited that such a sentence will comport with the purpose and intent of the Sentencing Guidelines; Title 18 U.S.C. § 3553 (a); Gall v. United States, 552 U.S., 38, 128 S. Ct. 586, 169 L.Ed.2d 335 (2007); United States v. Booker, 543 U.S.220, 125 S. Ct. 738 (2005), 160 L.Ed.2d 621; and the concept of an individualized sentence.

      Based on the facts and circumstances of this case, and paying heed to the defendant's life and background, counsel respectfully beseeches the Court to sentence Daniel Capaldo to a variant sentence consisting of a **non-custodial term of time served with three years supervised release.**

## THE FACTS OF THIS CASE

The Presentence Report ("PSR"), presents the facts of this case in greater detail, however, as to Daniel Capaldo, he was arrested on October 3, 2019 pursuant to an indictment. On November 24, 2020, Mr. Capaldo pleaded guilty, pursuant to an information and a plea agreement, to two Racketeering acts. The two Racketeering acts are Extortion Conspiracy and Financing an Extortionate Extension of Credit. The factual basis of the two acts are as follows: that between December 2018 and January 2019 Mr. Capaldo agreed with others to obtain property (the right to collect a debt) from John Doe # 1 and John Doe # 2. The plan included the use of threats of violence, if necessary, and that between January 2019 and May 2019, Mr. Capaldo, advanced another individual a sum of money knowing that it was the intention of that individual to lend the money to third parties and that, if necessary, violence would be used to collect the money from the third parties by that individual.

## THE GUIDELINE ANALYSIS

The defense **agrees** with the government's plea agreement analysis of the Guidelines calculation on pages 3 and 4. The defense **disagrees** with the PSR analysis of the Guidelines calculation on pages, 29, 30, 31 and 32.

Pursuant to Daniel Capaldo's plea agreement, the total adjusted offense level is 16, with an advisory Guidelines sentencing range of 27 to 33 months. The applicable Guidelines range should be determined based solely on the Extortion Conspiracy Act and the Financing an Extortionate Extension of Credit Act that Mr. Capaldo pleaded guilty to. Mr. Capaldo's position is that U.S.S.G. § 3D1.4 shall apply only to admitted conduct as represented in the information that he pleaded guilty to and acts that were not included in the accusatory instrument that he pleaded guilty to should not be included in the Multiple Racketeering Act analysis.

Therefore, the applicable Guidelines analysis should reflect only a 2 unit increase under U.S.S.G. § 3D1.4 for Mr. Capaldo's conviction on Racketeering acts 1 and 2 in the information. There should not be a four (4) level increase based on the addition of non convicted conduct. Thus, the advisory Guidelines should be calculated as follows:

R.A. 1: Extortion Conspiracy– John Doe #7 and John Doe #8

| | |
|---|---|
| Base Offense Level (§2B3.2(a)) | 18 |
| Plus: Offense involved express or implied threat of bodily injury (§2B3.2(b)(1)) | +2 |
| Total Offense Level | 20 |

R.A. 2: Financing an Extortionate Extension of Credit

| | |
|---|---|
| Base Offense Level (§2E1.1(a)) | 20 |
| Total Offense Level | 20 |

Multiple Racketeering Act Analysis (§ 3D1.4)

| | | |
|---|---|---:|
| Highest Adjusted Offense Level | | 20 |
| Units: | | |
|     Racketeering Act 1 (§ 3D1.4(a)) | 1 | |
|     Racketeering Act 2 (§ 3D1.4(a)) | 1 | |
|     Total Units | 2 | |
|     Levels Added (§ 3D1.4) | | +2 |
| Less: Minor Role (§ 3B1.2(b)) | | -2 |
| Less: Global resolution (§5K2.0) | | -1 |
| Total: | | 19 |

    Mr. Capaldo clearly demonstrated acceptance of responsibility through allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction is therefore warranted, pursuant to U.S.S.G. § 3E1.1(a), resulting in an adjusted offense level of 17 and a range of imprisonment of 30 - 37 months. Mr. Capaldo falls within Criminal History Category III. The government and Mr. Capaldo agree to recommend that, pursuant to U.S.S.G. §4A1.3(b)(1), the Court find that the he falls within Criminal History III because although he falls within Criminal History IV, under the Guidelines, Criminal History Category IV over-represents the seriousness of his criminal history and the likelihood that he will commit other crimes. Furthermore, Mr. Capaldo has accepted responsibility to the government's satisfaction in that he pleaded guilty in a timely fashion. Therefore an additional one-level reduction should be warranted, pursuant to U.S.S.G. § 3E1.1(b), resulting in an adjusted offense level of 16. This level carries a range of imprisonment of 27 - 33 months.

## MR. CAPALDO'S CRIMINAL HISTORY

    The defense agrees with the plea agreement and the PSR that Mr. Capaldo's Criminal History is overstated and that he is Criminal History Category III. Thus, Mr. Capaldo should be an Offense Level 16, Criminal History Category III offender and his guideline range should be 27-33 months.

# DANIEL CAPALDO'S PERSONAL HISTORY

Included in the Sentencing memoranda as **Exhibit 1** is a mitigation report prepared by Licensed Social Worker, Robert Maldinich. The mitigation report outlines Mr. Capaldo's personal background data, medical conditions, mitigating factors relating to his medical history, mitigating factors relating to his family, his strengths and Social Worker Maldinich's assessments and observations of Daniel Capaldo.

Daniel Capaldo's Personal Background

Mr. Capaldo was born on January 6, 1965, in Brooklyn, New York. His mother, who grew up in New York City's foster care, was 20 years old when Mr. Capaldo was born. His mother and father divorce when Mr. Capaldo was three years old and in essence, he was raised by his mother. Mr. Capaldo's father remarried and started a new family that included two sons. His visits were sporadic and unpredictable. Mr. Capaldo remembers waiting for his father by the window but he rarely showed up. As a result, Mr. Capaldo was so traumatized that his mother had to put him in counseling at the age of 10. His mother died in 2001.

After graduating from James Madison High School in 1983, Mr. Capaldo went to work as a laborer in the construction field. He became involved with local criminals in his neighborhood. As he reflects back, his involvement gave him a sense of safety and belonging compensating for the sense of emptiness he felt from his father's abandonment.

In 1992, Mr. Capaldo was arrested for acting in concert during two drug sales. He was sentenced to 11 years to life in state prison. While in prison, he enrolled in classes at Sullivan County Community College and earned an Associate Degree in Drug and Alcohol Counseling. By 1995, Mr. Capaldo was facilitating Alcoholics Anonymous and Narcotics Anonymous meetings at the prison. He also became a Certified Animal Handler and trained dogs to assist the blind.

In 2008, Mr. Capaldo met his wife, Katarzyna Lockhart, whom he married a year later. Although the couple had problems conceiving for many years, their only daughter Alexandra was born on October 7, 2015. Mr. Capaldo was 50 years old and his wife 43 at the time. Alexandra's birth reminded Mr. Capaldo of the feeling of emptiness he felt as a kid because of his father's abandonment, as such, he vowed to be a dedicated, loving and responsible father to his daughter. To Mr. Capaldo, Alexandra is a miracle child, he has been raising and homeschooling her since she was born. She is the complete change in Mr. Capaldo's life.

Also in 2008, Mr. Capaldo went to work at a home renovation company owned by his half brother. He was involved in maintaining supply lists, logistics, layouts, and supervising suppliers.

Daniel Capaldo's Medical Conditions

Mr. Capaldo suffers from asthma, bronchitis, mild valvular heart disease, mild dense carotid plaque, hyperlipidemia, chronic obstructive pulmonary disease, intermittent asthma,

hypertension, and high cholesterol. See **Exhibits 2, 3, and 4**. In addition, Mr. Capaldo suffers from osteoarthritis of the knees and hips, enchondroma of the left knee, a non-cancerous blood tumor that begins in the cartilage. Moreover, Mr. Capaldo has bilateral hip and right knee degenerative joint disease. He underwent a total left hip replacement on March 1, 2021. Dr. Michel N. Kang's medical opinion is that since degenerative joint disease does not heal on its own, Mr. Capaldo's hip replacement and right knee replacement is inevitable. See **Exhibits 5, 6 and 7.**

Mr. Capaldo's review of lab work also shows Positive ANA significant to auto immune disease. The pattern of his ANA is homogenous, which is indicative of systemic lupus. See **Exhibit 8**. Finally, as reflected on Dr. Mazan Rabadi's declaration, Mr. Capaldo is a former smoker, has a Body Mass Index of 36.94, placing him in the severely obese scale. His obesity exacerbates his co-morbidity conditions. As such, Dr. Rabadi is of the medical opinion that given Mr. Capaldo's underlying diseases, he should be away from large crowds and densely populated areas. See **Exhibit 9.**

## THE RELEVANT FACTORS MITIGATE
## IN FAVOR OF A TIME-SERVED SENTENCE WITH THREE YEARS
## SUPERVISED RELEASE

In Gall v. Unites States, supra, the Supreme Court noted that, while the United States Sentencing Guidelines "should be the starting point and the initial benchmark" in determining the nature and type of sentence to be imposed, they "are not the only consideration." Id., 552 U.S. at 596. After looking to the Guidelines, the District Court:

> Should then consider all of the factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extend of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. Id., 522 U.S. at 596-597 (citations omitted).

The Sentencing Guidelines are strictly advisory. See, United States v. Booker, supra. In the aftermath of this pronouncement, Title 18 U.S.C § 3553(a) has taken on far greater import to the sentence process. See, United States v. Crosby, 397 F.3d 103 (2d Cir. 2005). Courts may now examine aspects of an offender's life that, prior to Booker, were often overlooked or of lesser importance to the sentence process.

Title 18 U.S.C. § 3553 provides as follows:

> (a) Factors to be considered in imposing a sentence. – The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant;

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established for –

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines

        (i) issued by the Sentencing Commission pursuant to section 994 (a) (a) of Title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the sentencing Commission into amendments issues under section 994 of title 28); and

        (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the sentencing Commission into amendments issues under section 994(p) of title 28);

(5) any pertinent policy statement –

> (A) issued by the Sentencing Commission pursuant to section 944(A)(2) of Title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issues under section 994(p) of title 28); and
>
> (B) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced.
>
> (6) the need to ovoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

It is respectfully submitted that, applying each of these factors to the present case, the imposition of a time served sentence with three years supervised release would meet the standards and goals set forth in 18 U.S.C. § 3553(a)(2).

The offenses are clearly serious: On November 24, 2020, Mr. Capaldo pleaded guilty, pursuant to information and a plea agreement, to two Racketeering acts; Extortion Conspiracy and Financing an Extortionate Extension of Credit. However, Mr. Capaldo's involvements in these serious crimes should be mitigated by his early acceptance of responsibility. In addition, given Mr. Capaldo's history, characteristics and mitigating factors, a sentence of time served with three years supervised release is appropriate. Likewise, Mr. Capaldo has an extended loving family who is supportive and would guide him in living a law abiding life.

Annexed hereto as **Exhibit 10** are several letters submitted on Mr. Capaldo's behalf. While counsel implores the Court to read the letters in their entirety, it is urged that the excerpts that are reproduced herein demonstrate that Mr. Capaldo's character is such that a time served sentence with three years supervised release is entirely appropriate.

> Katarzyna Capaldo, Mr. Capaldo's wife, writes with respect to their daughter Alexandra:
>
> "Daniel has been an unbelievable father from the start. During the pandemic he became her teacher and care giver. He has taught her to read and write as well as mathematics. Since school has opened back up, she has excelled. He has continued to tutor her and has provided much needed care as I work and cannot afford child care at this time…. My husband had a hard life and made some very poor choices. I am not making excuses for him, but he is not who he is made out to be. Alexandra is the joy of his life; he is an excellent father and a good

husband. Alexandra would be heartbroken if he left as would I, it would be a mental and financial burden on us all."

Christopher Capaldo, Mr. Capaldo's brother tells the Court:

"Daniel has always looked out for my best interest and became a big asset to my business. Daniel is a very hard worker, willing to learn the trades and became very knowledgeable throughout the years. He is always the first one on the jobs and a great team leader… Daniel has always been there for me when I needed to talk to someone, Daniel helped me get through my divorce and always was a great uncle to my three children….When I visit my brother and see the way he plays, interacts with and loves his daughter, it makes me feel proud that he is one of the best fathers I have ever seen."

Derek Capaldo, Mr. Capaldo's youngest brother expresses:

" The Daniel Capaldo in your court room is not the same Daniel Capaldo that I know and love. My Daniel Capaldo is a role model, a hardworking, loving and caring person who you would be proud to call your brother. Daniel has made mistakes in his life, as we all have, but he is a model husband, father, son, brother, uncle, friend and so much more to so many people. I know Daniel has expressed remorse for his actions and is embarrassed by his indiscretion."

Christian Palmeiri, Mr. Capaldo's lifelong friend from High School states:

"He is a wonderful husband and father. Since he didn't have a father around, he made the decision to be a better man and a better father. Daniel doesn't miss a single event or milestone in his daughter's life. He is a loyal, loving husband to his wife, and they have built a beautiful foundation together. Without Daniel's presence, his family will crumble, leaving his daughter fatherless. It will destroy her soul as she inseparable from her father."

"Daniel has certainly made mistakes in his life. However, he is what they call a "gentle giant." Daniel is the man who pulls over to help an elderly woman cross the street. Daniel is the guy who buys fifty chocolate bars to help neighborhood kids support their Boy Scouts program. Daniel is the friend who will give you his honest opinion, even if he knows it may hurt your feelings. Daniel is the guy who gives advice to prevent others from making the same mistakes he has made…. Being raised without a father, naturally, he took the death of his mother very hard. He didn't have much to hold onto."

Anthony and Kathleen Cristiano, Mr. Capaldo's friends write to the Court:

"I see him as a great father and a loving husband. His family needs him home with them, Daniel is needed to help raise his six-year-old daughter who he picked up every day from school after work and has been the person taking care of her

during covid as his wife has been working. Daniel also has taken over all the responsibilities of home schooling his daughter during covid. "

Jennifer Gentile, Mr. Capaldo's friend also states:

"I met Daniel in 2008. Daniel is one of my father's closest friends, I consider Daniel as my uncle. When I with Daniel and his family, I see him as a loving husband and father. I have also babysat Daniel's daughter Alexandra. I have been with Daniel's family and see how he is a loving and caring husband and father."

The above-mentioned letters, and others attached under Exhibit 10, reveal that Mr. Capaldo has a family who is supportive and they all will benefit from his presence in their lives. Daniel Capaldo is worthy of this Court's compassion and leniency.

A time served sentence with three years supervised release will serve the statutory goals set forth in subsection two of section 3553(a). Mr. Capaldo was arrested on October 3, 2019. Due to his medical conditions, he was released to strict home confinement on March 30, 2020 by Chief Judge Brodie. Since then, he has complied with all Court-ordered conditions of release. The government and the defense analysis of the Guidelines places Mr. Capaldo at an adjusted offense level of 16 which carries a range of imprisonment of 27 - 33 months. Mr. Capaldo has been in confinement for 29 months and 7 days. Although his time of confinement falls well within the range of imprisonment for offense level 16 clearly meeting the standards and goals set forth in 18 U.S.C. § 3553(a)(2), Mr. Capaldo respectfully request the Court to deviate from the Guidelines given his compelling history, characteristics and mitigating factors.

In the case at bar, a time served sentence is more likely to promote respect for the law and provide just punishment. Mr. Capaldo has announced his acceptance of responsibility loud and clear by pleading guilty. With respect to the issue of deterrence, Mr. Capaldo accepted early responsibility for his role, a time served sentence of one year will promote deterrence to other defendants who may be inclined to commit crimes.

Mr. Capaldo is not likely to commit further crimes. As evidenced by the attached letters, he has a strong familial support system. This strong support makes it more likely than not, that Mr. Capaldo will not commit further crimes. In fact, Mr. Capaldo continuously expresses that he is done with the past that he wants to do the right thing and make his family proud. Being on home confinement, homeschooling his daughter, and spending quality time with his family, made Mr. Capaldo realize the value he brings to his family as a husband and father. He describes his relationship with his daughter as "indomitable" and is committed to making it even stronger by vowing to put his criminal past behind him once and for all. In addition, Mr. Capaldo was gainfully employed at his half-brother's company until his arrest on October 3, 2019. His brother-in-law is willing to provide Mr. Capaldo an immediate full-time position.

With respect to his medical condition, Mr. Capaldo has multiple serious underlying medical issues that put him at higher risk to contract COVID-19 and or other

9

infections if committed again to a prison environment. Currently he is suffering from severe GERD where he is prescribed Omeprazole dr, Sucralfate, and Famotidine. He will need to undergo a throat procedure in the near future which will involve an endoscopy under anesthesia. He will then need a follow up examination after this procedure to determine its cause and treatment. The treatment may involve surgery.

Mr. Capaldo has an abundance of strengths that warrant him being considered for leniency. Although he has made many poor choices in his live, he has also made many good ones, for instance, when he was first incarcerated, he enrolled in a college program and within a few years earned an Associate's Degree in Drug and Alcohol Counseling. He is a wonderful husband and a committed and loving father. He has taught his daughter Alexandra to read and write, as well as mathematics. Since the school opened back up, his daughter has excelled because of his teachings.

The love between Mr. Capaldo and his wife Katarzyna is bountiful and pure, made stronger by the fact that they worked so hard and endured so much hardship to become parents.  Alexandra is the center of their world. The bond between the parents is as strong as their mutual bond for Alexandra. There is no doubt that having Mr. Capaldo leave home would create a catastrophic emotional and financial hardship to the family. At the age of 57, Mr. Capaldo is strengthened by his past mistakes and the chances of him reoffending are unlikely.

A sentence of time served with three years supervised release will afford Mr. Capaldo the chance to begin a productive life of employment. He would be available to help support his family and continue taking care of his six-year-old daughter the way he during the last two years of home incarceration.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court should impose a sentence of time served with three years supervised release upon Daniel Capaldo.

                                                      Very truly yours,

                                                    Peter J. Guadagnino.