

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| EAG | *271 Cadman Plaza East* |
| F. #2018R01021 | *Brooklyn, New York 11201* |

March 11, 2022

<u>By ECF</u>

The Honorable Brian M. Cogan
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Daniel Capaldo</u>
       <u>Criminal Docket No. 19-442 (S-3) (BMC)</u>

Dear Judge Cogan:

    The government respectfully submits this letter in connection with the upcoming sentencing of the defendant Daniel Capaldo and in response to the defendant's sentencing memorandum, filed on March 10, 2022. Sentencing is currently scheduled for May 11, 2022. In his memorandum, the defendant seeks a sentence of time served, which amounts to approximately six months' imprisonment. The government respectfully submits that a sentence within the applicable Guidelines range, 27 to 33 months' imprisonment, is appropriate.

## BACKGROUND

    The defendant was formally inducted into the Colombo organized crime family of La Cosa Nostra (the "Colombo crime family") in January 2009, after having been an associate of the crime family for decades. Prior to his most recent arrest, Capaldo, along with his co-defendant Thomas Scorcia, reported to Joseph Amato, Sr., who was then a captain in the Colombo crime family. In an attempt to communicate without alerting law enforcement, Scorcia procured new, prepaid cellular telephones for Capaldo, Scorcia and Amato, Sr., on a monthly basis (requiring law enforcement to continually identify the new phones and obtain authorization to intercept those communications).

I.    Extortion of Gambling Business Operators by Amato, Amato Jr., Scorcia and Capaldo (December 2018 - January 2019)

In December 2018, three family members (a father, a son and the son's cousin) were threatening to physically hurt a close friend of co-defendant Joseph Amato Jr. (the "Friend") if the Friend did not make a timely payment on an outstanding gambling debt. On January 5, 2019, at the direction of the crime family, the Friend lured two of the family members, the father and son, to a meeting place by telling them that he was going to pay them. Instead, Scorcia and Capaldo, among others, relying on their reputation as inducted members of the Colombo crime family, accosted them and made clear to them that they would not be receiving repayment of the debt.

In one call after the resulting confrontation, which occurred on January 5, 2019 (JAJ #5042), Amato Jr. told his father, Amato, Sr., "They got here they thought they were cowboys and the second (unintelligible) got there they were like church mice. … The second when they got here you know they thought they were nuts and then when we popped out they were like church mice tails between their legs okay no problem no problem." Scorcia and Amato Jr. also exchanged a series of text messages, making clear their pleasure at having intimidated the father and son:

| | | |
|---|---|---|
| Scorcia: | They got the message good (JAJ #5230) | |
| Amato Jr.: | How embarrassing to get abused like that infront of infront of your son that was great (JAJ #5236) | |
| Scorcia: | His son would have got knocked the f*** out (JAJ #5238) | |
| Amato Jr.: | Forget it! They knew it would be bad if they got stupid I wish he would have said something (JAJ #5240) | |
| Scorcia: | Trust me me too but he was not a butt sorry and apologetic but I just couldn't slap them but I almost seen black and I was just for the fun of It (JAJ #5242) [1] | |
| Amato Jr.: | Extremely apologetic and polite as can be lol (JAJ #5246) | |

B.    Financing Extortionate Extensions of Credit

Scorcia operated a lucrative loansharking business. Capaldo financed certain of those extortionate extensions of credit.[2] Some coded conversations were intercepted

---

[1] Scorcia subsequently sent a text message to Amato Jr., suggesting that he wrote this message using the phone's voice to text function and that it was garbled in certain respects.

[2] On June 5, 2019, law enforcement executed a search warrant on Scorcia's residence, vehicle and person. Among the items recovered were records consistent with the

during a court-authorized wiretap. For example, in a telephone call on January 31, 2019 (#1585), Capaldo and Scorcia had the following conversation:

> Capaldo: Are you serious, or you're breakin' my balls?
>
> Scorcia: No, I'm fuckin' serious. I got bombarded with a lot of work, uh, for this week. A lot. I thought I was finished in the middle of the week. Ya know, it would help. It's up to you.
>
> Capaldo: Oh, what do you mean? Oh, what do you mean? The
>
> Scorcia: Yeah.
>
> Capaldo: The bathroom I'm doin'?
>
> Scorcia: The bathroom that you're doin', yeah.
>
> Capaldo: Yeah, I'm gonna be fin-, don't worry. They're tilin' it now. I'll, I'll, you could, you could (UI)
>
> Scorcia: No, no, no, no. Not that. For that home, my bathroom. The bathroom that we did a joint venture with, for my house. You gave me guys, you gave me guys this week, I wanted to know if you could spare another one or two for, uh, for tomorrow to get them to the house.
>
> Capaldo: (UI)
>
> Scorcia: Not Seguine Avenue, the other, the other b-, the other bathroom. In my house.
>
> Capaldo: In your house?
>
> Scorcia: Yeah. You started this week. You sent two guys the other day. I drove them over. I don't know if ya could spare another one or two.

---

operation of a loansharking business. Among those items was a notebook that included several pages appearing to reflect outstanding loans and payments made by certain debtors of Scorcia. Significantly, on numerous pages within the notebook, "Shrek" – a nickname for Capaldo – was written alongside the names of the debtors. For example, on one page of the notebook, there was the name "Dave," above which was the name "Shrek." Next to Dave was "19,200," a reference to the amount outstanding, i.e., $19,200. Below "19,200," were ten entries of "-300" or "300," which represent payments made by that debtor. On another page for "till/bread," it noted "Shrek = 5" and below that "75." On the same page, it said, "Shrek – 20 on knock," a reference to a knockdown loan.

3

    Capaldo:    (laughing) Oh boy.  All right, I'll talk to ya later.  Maybe, I don't know.

    Scorcia:    All right.  It's fuckin' crazy.  As long as ya get the tile and (UI) down and then pick it up.

    Capaldo:    All right.

    Scorcia:    It's, uh, it's ready

In this conversation, Capaldo and Scorcia were using plumbing terms as code to discuss Scorcia's obtaining one or two thousand dollars ("spare another one or two") to lend to someone who they had previously jointly lent money to ("the bathroom we did a joint venture with, for my house.  You gave me guys this week").

## DISCUSSION

I.    <u>The Applicable Guidelines</u>

The government agrees with the defendant that the calculation of the Guidelines range is as follows.

<u>R.A. 1: Extortion Conspiracy– John Doe #7 and John Doe #8</u>

| | |
|---|---|
| Base Offense Level (§2B3.2(a)) | 18 |
| Plus: Offense involved express or implied threat of bodily injury (§2B3.2(b)(1)) | <u>+2</u> |
| Total Offense Level | 20 |

<u>R.A. 2: Financing an Extortionate Extension of Credit</u>

| | |
|---|---|
| Base Offense Level (§2E1.1(a)) | <u>20</u> |
| Total Offense Level | 20 |

<u>Multiple Racketeering Act Analysis (§ 3D1.4)</u>

| | |
|---|---|
| Highest Adjusted Offense Level | 20 |

    Units:

| | |
|---|---|
| Racketeering Act 1 (§ 3D1.4(a)) | 1 |
| Racketeering Act 2 (§ 3D1.4(a)) | <u>1</u> |

|  |  |  |
|---|---|---|
|  | Total Units | 2 |
|  | Levels Added (§ 3D1.4) | +2 |
| Less: | Minor Role (§ 3B1.2(b)) | -2 |
| Less: | Global resolution (§5K2.0) | <u>-1</u> |
| Total: |  | <u>19</u> |

Assuming that the defendant falls within Criminal History Category III, an adjusted offense level of 16 carries a range of imprisonment of 27 - 33 months.

II.   <u>A Sentence Within the Applicable Guidelines Range is Warranted</u>

The government respectfully submits that, in this case, a sentence within the advisory Guidelines range is appropriate in light of all relevant factors, including the nature and characteristics of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence and to protect the public.

A.   <u>Legal Standard</u>

The Sentencing Guidelines are advisory, not mandatory. <u>United States v. Booker</u>, 543 U.S. 220 (2005). However, the Supreme Court held in <u>Booker</u> that the sentencing court must consider the Guidelines in formulating an appropriate sentence. <u>Id.</u> In <u>Gall v. United States</u>, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of <u>Booker</u>:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

<u>Gall</u>, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." <u>Id.</u> at 49-50 (citation and footnote omitted).

B.   <u>Analysis</u>

Based on the factors set forth in 18 U.S.C. § 3553(a), a sentence within the Guidelines range is appropriate in this case.

5

1.  The Nature and Circumstances of the Offense

The defendant has been convicted of a serious crime: participating in the affairs of a criminal enterprise – the Colombo crime family -- in connection with which the defendant committed a pattern of racketeering acts. In sum, the defendant continues to profit from his membership in and reputation as a member of the Colombo crime family.

2.  The Defendant's History and Characteristics

As discussed above, the defendant's history and characteristics show that he is committed to the goals of the Colombo crime family. The defendant has long been associated with La Cosa Nostra and in January 2009, the defendant was inducted as a full-fledged member of the Colombo crime family. In becoming an inducted member, the defendant took an oath swearing allegiance to its goals and to place the crime family above all else. The defendant also has a significant criminal history, strongly suggesting that he will likely continue to commit crime in association with the crime family. On January 7, 1993, Capaldo pleaded guilty in Kings County Supreme Court to criminal possession of a controlled substance in the second degree and was sentenced to 66 months to life imprisonment in a New York correctional facility. On February 3, 1993, Capaldo pleaded guilty in Richmond County Supreme Court to two offenses, including criminal sale of a controlled substance in the second degree, and was sentenced to 8 years to life imprisonment in a New York correctional facility. On April 11, 1995, Capaldo pleaded guilty to conspiracy to distribute narcotics and conspiracy to defraud the United States (by failing to pay taxes owed) and was sentenced to 168 months' imprisonment in federal custody. On December 1, 2010, Capaldo pleaded guilty to collection of unlawful debt in the Southern District of New York and on November 16, 2011, Capaldo pleaded guilty to financing an extortionate loan, and was sentenced to 41 months' imprisonment on both counts. In connection with those offenses, Capaldo served a three-year term of federal supervised release, which terminated on November 2, 2018. In sum, the defendant's history and characteristics also supports a sentence within the Guidelines range. 18 U.S.C. § 3553(a)(1).

2.  Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

The sentence must reflect the seriousness of the offense, promote respect for the law and provide just punishment. 18 U.S.C. § 3553(a)(2)(A). As noted above, the defendant's offense -- racketeering -- is serious, particularly when his membership in the Colombo crime family is considered. In addition, by engaging in criminal activity under the auspices of the Colombo crime family, the defendant has demonstrated that he lacks respect for the law.

6

3. <u>Affording Deterrence and Protecting the Public</u>

The sentence must afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B) and (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." <u>United States v. Davis</u>, No. 08-CR-332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010).

a. <u>Specific Deterrence and Incapacitation</u>

In this case, specific deterrence and incapacitation are critical. Capaldo claims that he "is no likely to commit further crimes" and suggests that his "familial support system" will ensure it. (Capaldo Sent. Mem.]at 9). The government disagrees. Over a period of decades, the defendant has sustained several convictions in connection with his association with and/or membership in the Colombo crime family. After serving a lengthy term of incarcerations in the 1990s and 2000s, the defendant was released and rather than reject its criminal means, the defendant was formally inducted as a member of the crime family. The government respectfully submits that despite numerous claims to the contrary at sentencing proceedings, aside from those who decide to cooperate against members of the mafia (and therefore are not permitted to maintain a connection to the mafia upon disclosure of their cooperation), few if any members of the mafia give up their connections to the mafia even after serving significant terms of imprisonment.

Nor does Capaldo's family support system give the government confidence that he will now disavow the criminal means of the Colombo family. At his sentencing in 2012, Capaldo's counsel there referenced the strong support of his wife, but that support notwithstanding, the defendant continued to commit crimes with the crime family.[3]

---

[3] His lawyer said:

> Judge, in essence, my client is <u>now married</u>, his wife is in court. <u>His family is in court</u>. <u>He has a very nice support staff</u>. They wrote very nice letters to your Honor. Each letter has described this defendant with very nice words, and I'll quote some of the words that we used. They say he's very intelligent, he's respectful, he's kind, he is remorseful, he's expressed regret, he is caring, thoughtful, friendly, honorable, loving, responsible, reliable, hard working, and a man of great faith. Those are the words that I extracted from the collection of letters. He is 46 years old, he lives in Howard Beach. He has been working since his release from the BOP since 2008. He works with his brother in a contracting company. The brother is here in court who is the owner of that company. He's demonstrated a real interest in participating in that industry. And his father, he basically grew up in that industry with his father. His father still

7

A sentence within the Guidelines range will, however, at least incapacitate the defendant, thereby protecting the public from further crimes he would otherwise commit during that period of time. Given the need for deterrence and incapacitation, the government respectfully submits that a sentence below the Guidelines range would be insufficient to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(C).

        b.        General Deterrence

In addition, a sentence within the advisory Guidelines range is necessary to deter others who are in a position to choose between a law-abiding life and a life of crime.

        5.        Avoiding Unwarranted Disparities

Finally, a sentence within the Guidelines range is necessary to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

---

works as a contractor. Judge, on Exhibit A he has some medical issues, we attached some medical reports to give your Honor insight medically what's happening to him. Those reports are attached.

(Feb. 28, 2012 Sent. Tr. 21-22).

8

CONCLUSION

In this case, given all of the facts and circumstances discussed above, a sentence within the applicable Guidelines range is necessary in order to achieve the purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/
Elizabeth Geddes
Megan E. Farrell
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (BMC) (by ECF)
      Patricia Sullivan (by e-mail)
      Peter Guadagnino, Esq. (by ECF)